**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| **L.W., a minor, by and through his parents** | ) | |
| **SAMUEL and TINA WHITSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:05-CV-274** |
| | ) | **(Phillips)** |
| **KNOX COUNTY BOARD OF EDUCATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff L.W., a minor, challenges the action and policy of defendants Knox County Board of Education, Superintendent Charles Lindsey, and Principal Cathy Summa, that served to preclude L.W., as well as other students at Karns Elementary School (KES) from reading and discussing the Bible with friends during recess. L.W. has sued defendants alleging school officials' actions have violated his rights under the Free Speech Clause, the Free Exercise Clause, the Establishment Clause, the Due Process Clause, and the Equal Protection Clause.

## <u>Background</u>

L.W. is the eleven year old son of Tina and Samuel Whitson. He is also a Christian who adheres generally to orthodox Christian beliefs. L.W. considers Bible study an essential and indispensable component of his Christian faith. Because of this, L.W.

seeks out opportunities during his free time to study the Bible and discuss its content with others.

L.W. is also a fifth grade student at KES. Defendant Dr. Charles Lindsey is the Superintendent of the Knox County Board of Education (Board). Russ Oaks is the Director of Public Affairs for the Board. Defendant Cathy Summa is the Principal at KES.

Every school day at KES, weather permitting, L.W., along with other students, enjoys a time of recess in a playground area of the school. The playground area, where L.W. attends recess, is a large space with various playground structures. There are also wide open spaces, shade trees, benches and tables.

During recess, students may engage in a variety of activities, including playing on the playground structures, playing games, working on school assignments, reading and discussing books and other materials, resting, talking, and other activities, as long as they stay in their assigned playground area and do not disrupt the function of the school. For this thirty-minute period, it is common for students to gather to discuss written materials, such as school assignments, American Girl doll magazines, Harry Potter books, and other materials that are not banned by the school.

At some point in the 2004/2005 school year, L.W., and a fourth grade friend, D.S., began to read the Bible and talk about it together during recess. After D.S. spread

the word, a few more students joined in the discussion.  For about a week, during recess, a small group of fourth graders got together in the corner of the playground, sat under a tree, and discussed the Bible.  The Bible discussion did not involved any parents, teachers, or any other adults, it was maintained entirely by fourth graders.

After about four or five days of participating in this activity, L.W. avers the Bible reading and discussion was stopped by the school.  On this particular day, L.W. decided to play on the fort during recess, but the other children in his group were proceeding with the Bible study.  L.W. saw Principal Summa come to the playground and speak with their fourth grade teacher, Ms. LaRue.  After recess, L.W. learned that the Bible discussion had been halted by school officials.  Specifically, D.S. was told by Ms. LaRue that the recess Bible study must end.  L.W., D.S., and several other children understood that the Bible discussion was stopped pursuant to a directive by Principal Summa.

L.W. was upset that the school prohibited Bible study during recess.  It signified to him that school officials believed there was something wrong with the Bible and his Christian faith.  D.S. told his father, Chad Sparks, about what had happened.  Mr. Sparks was told that a parent in his son's class complained to a teacher about the Bible being discussed on school grounds.  He was informed that the matter came to the attention of Principal Summa and she instructed his son's teacher to stop the Bible activity during recess.  Mr. Sparks approached Principal Summa about the Bible discussion a few days

later. He was told by Summa that a parent complained and she thought it best to stop the Bible study.

Mrs. Whitson spoke with D.S.'s mother about the incident and she confirmed that a parent complained and the Bible study was halted as a result. Mrs. Whitson attempted to talk to Principal Summa about the situation, but Summa did not have the time, and declined to discuss it with her. Mrs. Whitson understood from other parents that Principal Summa decided to stop the Bible readings because of her belief that it would violate "separation of church and state."

On May 9, 2005, the Whitson's attorney sent a letter on behalf of the family to Superintendent Lindsey and the Board, advising that the policy and action of disallowing Bible reading and discussion during recess violated L.W.'s constitutional rights. Knox County school officials declined to respond to the letter. On May 12, 2005, Principal Summa issued a letter to all parents of KES explaining her actions. Also, around the same time, Summa and other school officials submitted a series of statements to the media expounding on their position about the matter.

The May 12 letter was authored by Principal Summa and distributed to parents of KES through the children. In her letter, Summa stated:

> earlier this year, three elementary age students approached
> me asking if they could have a Bible study group at school
> during recess. I also met with a parent of one of these children

-4-

who asked the same question. My response was that children
could not have a Bible study class during the school day.

The Whitsons viewed Summa's letter to the parents as confirmation that Bible discussion would no longer be permitted during recess at KES. This position was reiterated several times over in media outlets. In one news article, school officials stated that children are permitted to bring their Bibles to KES, but they cannot read them during recess. Summa is described as saying students are barred from reading the Bible during recess. Another school official is quoted as saying: "I think recess is part of the school day. I wouldn't call it free time, recess is not included." Russ Oaks stated that the school system only permits such groups to meet before and after school hours. Summa is also quoted as saying: "The Knox County Law Department sees recess time as part of instructional time. That's their interpretation."

Following the stoppage of the Bible discussion, L.W. did not attempt to read his Bible again at recess, spanning his time in the fourth and fifth grade. He was afraid he would get in trouble for having a Bible study during recess.

Plaintiff filed a motion for preliminary injunction which was heard by the court on March 14, 2006. After presenting oral arguments, the parties conferred and reached an agreement as to the preliminary injunction. The parties submitted an agreed order stating: "Knox County contends that it has not in the past and shall not in the future have

a policy or practice of monitoring or regulating the reading and/or discussion of children during recess, including the Bible or any other recognized religious text."

In response to plaintiff's recitation of facts, defendants state as follows: Sometime in October 2004, three fourth graders went to Principal Summa and asked if they could continue to have an informal Bible discussion during recess. Principal Summa, misunderstanding their request and believing they were asking for a formal Bible study class during the school day, turned them down. Several days later, Mr. Sparks went to speak to Principal Summa about the Bible study. During the conversation, Mr. Sparks thought they were talking about an informal playground Bible study and Principal Summa thought they were talking about a formal Bible study class.

L.W. was not one of the three children who went to speak to Principal Summa. L.W. talked to the three children and formed the belief that the principal had gone out on the playground and ordered the children to stop the Bible study. L.W. did not talk to Principal Summa or his teacher about his belief that Bibles had been banned from the playground. L.W. told his parents that Principal Summa had gone out on the playground and ordered the children to stop the Bible study saying, "put those things away. Put them in your backpack and take them home, never bring them back." L.W. told his parents that he did not actually witness the incident. L.W.'s mother claims that she spoke to another parent who allegedly said that her child said that the principal had gone out on the

playground and stopped the Bible study and told the children to put away the Bibles and never bring them back.

Although L.W.'s mother had previously been told by L.W.'s teacher that there was no problem with L.W. bringing a Bible to school, she never spoke to the teacher or the principal about this matter. L.W.'s mother attempted to speak to Principal Summa one time in the hallway to talk about the Bible ban on the playground, but the principal was busy at the time. L.W.'s mother did not attempt to make an appointment to talk to Principal Summa or any other school official.

Principal Summa first became aware that the Whitsons were concerned about Bible related activity at recess when she saw a release from the Allied Defense Fund (ADF) on the WorldNet website, and heard the discussion on the Hallerin Hill radio program. Dr. Lindsey first learned about the Whitson matter through the media. Russ Oaks first heard about the Whitsons' claims from the producer of the Hallerin Hill radio program who called while they were on the air May 12, 2005.

On May 11, 2005, ADF issued a press release referencing a letter to Knox County Schools. On May 12, an article appeared on WorldNetDaily.com. On that same day, Mrs. Whitson and counsel, Chuck Pope, appeared on Fox News. On May 12, Principal Summa sent a letter home with children to assure parents that having Bibles at

KES was not prohibited in any way. The next day, May 13, Dr. Lindsey received an unsigned letter, purportedly from attorney Pope, addressed to "Dear Sir or Madam."

On May 12, 2005, Mr. Sparks went to KES and spoke to Principal Summa, and at this time, mentioned the playground. "That was when the lights came on. And she said, You mean to tell me that they were doing the Bible study thing on the playground and not in the classroom and that's what they were wanting? . . . That's what it was all about?" And I said, "Yes." And she goes, "I did not know that. I did not know that." Principal Summa thought that they wanted to have a Bible study in class, and that was not the case.

## Analysis

The parties have filed cross-motions for summary judgment. Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v.*

-8-

*Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Plaintiff L.W. avers he has been prevented by school officials from exercising his right to read and discuss the Bible with his friends on the playground during recess, which is non-instructional time at school.  L.W. argues that the undisputed facts show that Bible discussion during recess was prohibited by school officials; that school officials repeatedly defended this policy; and that school officials have refused to correct this constitutional wrong.  Thus, summary judgment should be granted to L.W. on his constitutional claims.  In particular, this action of school officials in banning student Bible reading and discussion during recess triggers a number of constitutional concerns.  The ban infringes on L.W.'s right to convey a message in public (violating the Free Speech Clause), precludes the exercise of L.W.'s faith during his free time (violating the Free Exercise Clause), demonstrates hostility towards religion (violating the Establishment Clause), acts as an *ad hoc* ban on speech (violating the Due Process Clause), and does so in a discriminatory fashion (violating the Equal Protection Clause).

Defendants have moved for summary judgment on the grounds that (1) plaintiff has failed to exhaust administrative remedies prior to filing his complaint, (2) the Knox County Board of Education took no action to prohibit or restrict reading or discussion

of the Bible and cannot be liable under 42 U.S.C. § 1983 under the doctrine of *respondeat superior*, (3) assuming that the Board was liable for the actions of Dr. Lindsey or Ms. Summa, plaintiff has no claim under § 1983 for violation of his First or Fourteenth Amendment rights, and (4) plaintiff is no longer a student at KES and his claims are moot.

First Amendment Claims

Student speech falls in one of three distinct categories, each governed by a different legal standard: (1) school-sponsored speech, which is governed by *Hazelwood v. Kuhlmeier,* 484 U.S. 260 (1988); vulgar, obscene and plainly offensive speech, which is governed by *Bethel School District No. 403 v. Fraser,* 478 U.S. 675 (1986); and (3) all other student speech not fitting into the previous two categories, which is governed by *Tinker v. Des Moines Ind. Comm. School Dist.,* 393 U.S. 503 (1969). L.W.'s speech is not school sponsored, that is, speech "supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences." *Hazelwood,* 484 U.S. at 271. Rather, his speech is entirely private. Thus, *Hazelwood* does not apply. *Fraser* is also inapplicable because L.W.'s religious speech is not "offensively lewd and indecent." *Frasier*, 478 U.S. at 683. Therefore, *Tinker* is the appropriate standard for judging the restriction on speech in this case.

In *Tinker*, the Supreme Court held that "in the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views." *Id.* at 511. Prohibitions on student speech are

unconstitutional unless there is a showing that the speech would "materially and substantially interfere with the requirement of appropriate discipline in the operation of the school" or "impinge upon the rights of other students." *Id.* at 509.

Religious expression is also protected by the First Amendment. *Widmar v. Vincent,* 454 U.S. 263 269 (1981). *See also Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 760 (1995) ("private religious speech . . is as fully protected under the Free Speech Clause as secular private expression"). Students are not required to "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker*, 393 U.S. at 506. In *Tinker,* the Supreme Court emphasized that the First Amendment protections afforded students extend to the "cafeteria," the "playing field," or simply being "on the campus during the authorized hours." *Id.* At 512-13. Elementary schools are not exempted from these constitutional demands. *See Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118,* 9 F.3d 1295, 1298 (7th Cir. 1993); *Denooyer v. Merinelli,* 1993 WL 477030 (6th Cir. No. 18, 1993) (using *Tinker* and *Hazelwood* standards for deciding an elementary school free expression case).

L.W. asserts that the restriction imposed on his religious expression is unconstitutional under the mandates of *Tinker.* In analyzing the ban, L.W. states that the activity barred by defendants amounts to nothing more than a few children gathering in the corner of the playground during recess and engaging in peaceful discussion. Despite a parent's complaint, it was not disruptive. And because it involved the private speech of the

-11-

students, L.W. argues the activity did not raise any legitimate Establishment Clause concerns.

Defendants respond that when Principal Summa told the children they could not have a Bible study, she acted while under the impression that they were seeking a formal Bible study class during the school day. A formal Bible study during the instructional day, even if led by non-school faculty, would violate the Establishment clause, argue defendants.

Recess as Non-Instructional Time

Schools have less control over student speech during non-instructional time. *Westfield High Sch. L.I.F.E. Club v. City of Westfield,* 249 F.Supp.2d 98, 119 (D.Mass. 2003) ("Courts are more deferential when schools shape the bounds of their curriculum ... than when schools try to shape the bounds of private speech that occurs during non-instructional time between classes, during recess, in the cafeteria, on the playing field, or other designated 'free time' during the school day"). Other federal courts that have considered the issue, have viewed recess as being non-instructional time. *See, e.g., Christopher S. V. Stanislaus County Office of Educ.,* 384 F.3d 1205, 1212 (9th Cir. 2004) (in the absence of skills being learned, recess is non-instructional time); *Walz v. Egg Harbor Township Bd. Of Educ.*, 187 F.Supp.2d 232, 238 (D.N.J. 2002) (lunch and recess deemed non-instructional time); *Daugherty v. Vanguard Charter Sch. Academy,* 116 F.Supp.2d 897, 915 (W.D.Mich. 2000) (lunch recess considered non-instructional time).

Recess at KES is no different despite defendants' claims to the contrary. In support for recess being instructional time, defendants state that students must remain on campus and the teachers are at liberty to require a child to make up deficient school work, or "sit out" for disciplinary reasons, during recess. Even assuming such to be true, these events do not qualify the period as instructional time under the case precedents cited above.

L.W. asserts that the only times he sought to engage in Bible reading and discussion were during periods when there was no formal instruction. During recess, children at KES are free to engage in any activity they desire on the playground, as long as they stay in the vicinity, and do not violate school rules. L.W. argues that merely reading and discussing written materials during recess cannot be deemed disruptive, but within anticipated activity at that time. The students' informal activity did not present any safety concerns. The children reading the Bible were precisely where they were supposed to be, and followed all appropriate rules of conduct for the playground. Neither did the discussion invade the rights of any other students, who remained free to take part in their own recess activity. Under these circumstances, L.W. avers that any apprehension about a disturbance breaking out on the playground was unwarranted.

Defendants respond that regardless of whether lunch and recess were instructional or non-instructional time, Knox County Schools has always treated recess as discretionary time for elementary students. Defendants argue that L.W. cannot prevail

because the Bible was not banned from the playground. When Principal Summa told the children they could not have a Bible study, she acted while under the impression that they were seeking a formal Bible study class during the school day. She believed that a formal Bible study during the instructional day, even if led by non-school faculty, violated the Establishment Clause. Until Summa spoke to Mr. Sparks on May 12, she did not understand that the children were seeking an informal playground activity. She merely intended to tell the children they could not have a formal Bible class during the school day.

In addition, defendants point to the deposition testimony of L.W. and state that his testimony does not support his contention that his Constitutional rights were violated. L.W. testified that he did not carry a Bible to school prior to the incident, so he did not stop taking a Bible to school because of any action by school officials. In third grade, L.W. said a prayer at lunch with a buddy, but did not do it in the fourth grade. After the incident with the Bible study group. L.W. still felt that he could say a prayer at lunch, if he wanted to. He thought that praying was okay at KES. L.W. further testified that he thought KES was friendly to the Christian religion.

In response, plaintiff submitted the deposition testimony of Ms. LaRue, L.W.'s teacher, which he avers shows that his constitutional rights were violated by school officials. Ms. LaRue testified a parent complained about the children reading their Bibles on the playground during the '04-'05 school year. Prior to that time, D. had approached her on the playground and told her the children were doing a Bible study. She approved the

-14-

activity. She thought it was just another kid thing. After she received the complaint from a parent, Ms. LaRue felt she needed to check on what to do. She headed out to the playground, called D. over to the side and told him that she had received a complaint and didn't know what to do. She asked him to hold off for a day until she could find out from Principal Summa what she needed to do. She then went to Principal Summa, and reported that a parent had complained about the students' Bible study. She relayed to Summa that the parent did not approve of the Bible study, and the parent believed it violated the separation of church and state. In a 30-second conversation, Principal Summa advised her that the children could not have an organized Bible study, based on Knox County policy. Ms. LaRue understood that the students could still have their Bibles, they could talk about them, but it could not be organized. There were no adults involved in the Bible study, it was student initiated and student led. The student leading the Bible discussion was prepared, with notes, so it was "organized" in her opinion. Ms. LaRue then returned to her classroom, but did not tell the children what Principal Summa had said. The next day, D. asked Ms. LaRue what Principal Summa had said, and she relayed to him that Summa said that the students could not have an organized Bible study. Ms. LaRue stated that Principal Summa's letter dated May 12, 2005, referred to the Bible study group that included L.W. and D.

Ms. LaRue's testimony raises questions of fact regarding the Bible study stoppage and Principal Summa's involvement in stopping the Bible study. Perhaps, as defendants argue, this incident arose as a result of a simple misunderstanding. On the

other hand, it is possible that Principal Summa was following Knox County policy which prevented L.W. from exercising his right to read and discuss the Bible with his friends on the playground during non-instructional time at school. L.W. has presented evidence that Bible discussion during recess was prohibited by school officials, that school officials repeatedly defended this policy, and that school officials refused to correct this constitutional wrong. Defendants contend that the unconstitutional policy and action is the result of a "simple misunderstanding." Such a misunderstanding does not explain why Summa and other school representatives defended the action in stopping the Bible discussion upon the enunciated policy that recess time is instructional time when it became clear that the children only wanted to conduct the activity on the playground during recess. Trials exist to resolve such issues of fact, and summary judgment is to be used only when there is no question as to such issues of fact. Here, many questions are left unresolved. These questions must be resolved at trial.

Exhaustion of Administrative Remedies

Defendants aver that L.W. has failed to exhaust available administrative remedies and his complaint should be dismissed. In support of their assertion, defendants state that Board policy BCBI provides that "any matter relating to the operation of the school system may be appealed to the Board." BCBI also provides that all complaints should be channeled through proper sources before being brought to the Board and directs parents to talk to the teacher, the principal, the appropriate supervisor or director, and the superintendent. Tennessee state law also requires a parent aggrieved about a student's

-16-

religious expression at school exhaust administrative remedies. Tenn. Code Ann. § 49-6-2904 (Tennessee Student Religious Liberty Act). Defendants' position is without merit.

The existence of unexhausted state administrative remedies cannot bar a claim brought under § 1983. *See Patsy v. Bd. of Regents,* 457 U.S. 496, 500 (1982). Moreover, the Tennessee Student Religious Liberty Act does not purport to operate so as to bar a § 1983 claim. By its plain language, the Act only applies when a claim is brought under the Act directly, and does not apply to claims brought pursuant to federal and constitutional law. The Act provides: "No action may be maintained pursuant to this part unless the student has exhausted the following administrative remedies...." Tenn. Code Ann. § 49-6-2904(c). Here, L.W. is not pursuing any claim for violation of his rights under the Act; rather, he is pursuing a claim based on his rights under the U.S. Constitution through § 1983. Thus, L.W. is not required to exhaust any administrative remedies under either the Tennessee Student Religious Liberty Act or school board policy prior to pursuing relief for Constitutional violations.

Municipal Liability

L.W. has sued the Knox County Board of Education under § 1983 to recover for alleged violations of his First Amendment and Fourteenth Amendment rights. To prevail on his claims, L.W. must prove that his Constitutional rights were violated, and that the school board was responsible. A municipal liability claim against the County and the Board must be examined by applying a two-pronged inquiry: (1) whether L.W. has asserted the

-17-

deprivation of a constitutional right; and (2) whether the County and/or the Board is responsible for that violation. *Doe v. Claiborne County,* 103 F.3d 495, 505-06 (6th Cir. 1996). For liability to attach, both questions must be answered in the affirmative. *Id.* At 507. The Board states that it had no policy limiting L.W.'s right to read or discuss the Bible at school. Thus, it has no liability for any alleged violation of L.W.'s constitutional rights.

L.W. has asserted the deprivation of a constitutional right, so he has met the first prong of the test. As to the second prong, there exist material issues of fact in dispute whether the Board is responsible for the alleged violation. The Board possesses power to create and implement policies in the Knox County School system by virtue of Tennessee law. Superintendent Lindsey is the sole employee of the Board, and has been delegated the responsibility for carrying out the Board's policies in the school system. Principal Summa is delegated the responsibility of implementing the Board's policies at KES. In particular, Summa is charged with the responsibility of developing procedures at KES that implement the Board's policies. This includes the administration of policies pertaining to student expression on school grounds.

Viewing the evidence in a light most favorable to plaintiff, Summa and other school representatives made numerous statements to the press and advised that Bible reading would only be allowed during free time and not recess. Thus, students would only be permitted to read and discuss the Bible before or after school. This was communicated as the official school position as adopted by the Knox County Law Department. Moreover,

-18-

L.W. has presented evidence that school officials repeatedly stated that Summa's action in stopping the informal Bible study were justified. School officials declared as a matter of policy that children can only read and discuss the Bible during their free time, which does not include recess, as school officials view such time to be instructional time.

It appears to the court that L.W. has presented more than a scintilla of evidence to support a claim of municipal liability against the Knox County Board of Education. Thus, summary judgment is not appropriate.

Official Capacity

Dr. Lindsey and Principal Summa have been sued in their official capacities. These defendant assert they are entitled to summary judgment in their official capacities because a suit against an official of the state is treated as a suit against the municipality. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985). At this juncture in the proceedings, the court will **DENY** the motion, subject to renewal at trial after the plaintiff has presented his proof.

Qualified Immunity

Cathy Summa, in her individual capacity, has moved for summary judgment asserting a defense of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability, and

-19-

like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." The court, when ruling on a qualified immunity issue, must consider whether, taken in a light most favorable to the party asserting injury, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). If no constitutional right would have been violated were the allegation established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established. The contours of the right must be sufficiently clear such that the reasonable official would understand that what she is doing violated that right. *Graham v. Connor,* 483 U.S. 635, 640 (1987). The relevant, dispositive inquiry in determining whether a right is clearly established is whether the official knew or reasonably should have known that the action she took within her sphere of official responsibility would violate the constitutional rights of the plaintiff, or if she took the action with the malicious intent to cause a deprivation of constitutional rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982). If the law did not put the official on notice that her conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Maley v. Briggs,* 475 U.S. 335, 341 (1986). To determine if Cathy Summa is entitled to qualified immunity, (1) the court must determine whether the facts show that she violated a constitutional right of L.W., and (2) whether the right was clearly established so that a reasonable official would understand that what she is doing violated that right. *Saucier,* 533 U.S. at 201-02.

Summa argues that the constitutional rights of elementary school children to hold a Bible study during recess were not clearly established at the time of the events alleged in plaintiff's complaint. Summa states that there has been no ruling in the Sixth Circuit that says ten-year olds can dictate what goes on at recess. Nor have there been any rulings in the Sixth Circuit that clearly establish that elementary school children have a constitutional right to have a Bible study during recess. The court finds Summa's argument without merit.

It is plain that L.W.'s constitutional right to read and study his Bible with friends was clearly established. Contrary to Summa's assertion, the absence of a Supreme Court or Sixth Circuit precedent directly on point does not justify ignorance in violating this right. The proper standard is that the "contours of the right must be sufficiently clear that a reasonable official would understand that what she is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 535 (1985).

The principle that public school students possess First Amendment rights is well-settled. *Tinker* made clear that prohibitions on student speech are unconstitutional unless there is a showing that the speech would "materially and substantially interfere with the requirement of appropriate discipline in the operation of the school" or "impinge on the rights of other students." *Tinker,* 393 U.S. at 509. In addition, the U.S. Dept. Of Education

-21-

has issued guidelines on religious expression in public schools on multiple occasions. Most recently, in 2003, former Secretary of Education Rod Paige issued a letter along with new guidelines, pointing out that according to the No Child Left Behind Act, schools are required to comply with the law in this regard, and specifically stated that "students may read their Bibles or other scriptures, say grace before meals, and pray or study religious materials with fellow students during recess, the lunch hour, or other non-instructional time to the same extent that they may engage in nonreligious activities." As an administrator, Summa is expected to be aware of the implications of the No Child Left Behind Act and the federal and state educational guidelines. A reasonable official in her position certainly would have been familiar with these standards. As stated above, a reasonable jury could find that Principal Summa violated L.W.'s constitutional rights by banning Bible study at recess. Moreover, L.W.'s right to read and discuss the Bible at recess with his friends is a clearly established right under the First Amendment. Thus, Principal Summa is not entitled to qualified immunity for her actions.

## Conclusion

For the reasons stated above, defendants' motion for summary judgment [Doc. 71] is **DENIED;** plaintiff's motion for summary judgment [Doc. 74] is **DENIED;** Cathy Summa's motion for summary judgment in her individual capacity [Doc. 77] is **DENIED;** Cathy Summa's motion to dismiss for failure of plaintiff to exhaust administrative remedies [Doc. 33] is **DENIED.** The parties will prepare the case for trial.

**IT IS SO ORDERED.**


**ENTER:**


_____s/ Thomas W. Phillips_____
United States District Judge